**TOBIN, Secretary of Labor, v. PIELET et al.**

No. 10201.

United States Court of Appeals
Seventh Circuit.

Heard Jan. 9, 1951.

Decided Jan. 23, 1951.

Edward R. Litsinger, Andrew W. Gatenbey, John D. Clancy, Jr., Chicago, Ill., for appellants.

William S. Tyson, Solicitor, Bessie Margolin, Asst. Solicitor, U. S. Department of Labor, Washington, D. C., Herman Grant, Regional Atty., U. S. Department of Labor, Chicago, Ill., William A. Lowe, Helen Grundstein, Washington, D. C., of counsel, for appellee.

Before MAJOR, Chief Judge, and DUFFY and LINDLEY, Circuit Judges.

MAJOR, Chief Judge.

This is an appeal from a judgment, entered May 10, 1950, adjudging respondents guilty of criminal contempt for wilful violations of an injunction restraining them from violating the overtime, record-keeping and shipment provisions of the Fair Labor Standards Act of 1938, 29 U.S.C.A. § 201 et seq. The judgment was predicated upon the court's findings of fact and conclusions of law. By the judgment each of the respondents was sentenced to pay a fine in the amount of $5,000.00, and the costs of prosecution. In addition, the respondents were directed to pay to certain employees wage reparations in the amounts as shown in petitioner's Exhibit No. 26, for the period between October, 1946, and May, 1949, inclusive. The judgment further provided that respondents pay such fines, costs and reparations within ten days, otherwise to stand committed.

The two main questions raised on this appeal are (1) that the proof was not sufficient to justify the judgment of criminal contempt and that the court was without authority to assess costs against respondents in such a proceeding, and (2) that the court was without authority to order the payment of reparations by respondents, this being a remedy available only in civil contempt.

Respondents' first contention may be disposed of in brief fashion. We have examined the record, including the many exhibits, and read the oral testimony, and have no doubt but that it supports the court's findings and judgment that respondents were guilty of the criminal contempt alleged. This is so notwithstanding the record reveals some rather serious inconsistencies which might be profitably enumerated if we were the triers of the facts, which we are not. That was peculiarly the function of the district judge, and the only question here is whether his findings and conclusions are substantially supported. We think that they are.

Notwithstanding our conclusion in this respect, we shall briefly refer to the proof offered by the petitioner because it has a bearing not only upon the issue to which we have just referred but also upon the issue which we shall subsequently discuss. Respondents had twice previously been before the district court in similar proceedings. On March 15, 1941, the Administrator of the Wage and Hour Division (afterward the Secretary of Labor was substituted as the party-plaintiff) sought an injunction to restrain violations of the minimum wage, overtime, shipment and record-keeping requirements of the Act. The court found against respondents and enjoined each type of violation. No appeal was taken from this order. On May 24, 1944, a criminal prosecution was instituted for violation of the injunction. A judgment was entered against respondents on the ground, among other things, that they had failed to pay certain employees at the rate of time and one-half of their regular pay for hours worked in excess of forty per week, and respondents therein were directed to pay such overtime wages in

compliance with the court's injunction. Again no appeal was taken, and presumably this judgment was satisfied.

The instant action, instituted on October 31, 1949, is the second prosecution for criminal contempt of the injunction. Respondents were engaged in the demolition of buildings and the handling of scrap iron and other similar junk material. At different times they employed several hundred men, part of whom worked in respondents' yard, but it appears that the majority were on jobs away from the yard demolishing buildings. Respondents' books were offered in evidence by petitioner, which disclosed that the employees were paid on an hourly basis, with time and one-half for hours worked over forty per week. However, twenty-three employees testified in the proceeding that they were employed on a daily rather than an hourly basis. Respondents admit that twenty-one of such witnesses so testified. The court expressed the opinion that these witnesses testified truthfully, and found accordingly. It follows that respondents' records were inaccurate in that they did not properly reflect the hourly rate and, consequently, the amount of overtime to which the testifying employees were entitled.

■ There were also numerous instances shown where the number of hours worked by employees was not recorded on the books, and particularly is this so as to the hours worked on Sundays. There were other instances where the number of hours recorded was fewer than those actually worked, and other facts and circumstances were shown which seriously reflect upon the accuracy of the records and for which respondents offer no adequate explanation. In fact, the errors shown are far too numerous to be ascribed to innocent mistakes or oversights. Especially is this so when it is taken into consideration, as the district judge had a right to do, that respondents by reason of the previous proceedings had been warned as to their duty to keep accurate records in compliance with the Act. The judgment as it relates to criminal contempt is affirmed.

■ Respondents argue that in criminal contempt, the court was without authority to award costs. While we find no case where this question has been decided, it has been held that the court may properly award costs in a proceeding for civil contempt. Gompers v. Buck's Stove & Range Co., 221 U.S. 418, 447, 31 S.Ct. 492, 55 L. Ed. 797; McComb v. Norris, 4 Cir., 177 F.2d 357, 360. That the charging of costs to a defendant found guilty in a criminal case is proper is not open to doubt. And we perceive no reason why it may not be properly done in a proceeding for criminal contempt. The judgment against the respondents for costs is also affirmed.

■ Respondents' contention that the court was without authority to include in its judgment a direction that they pay to certain employees wage reparations presents a more serious problem. That this was a judgment proper only in civil contempt is hardly open to question. In fact, the two forms of contempt depend upon the character of the judgment. As the court stated in Gompers v. Buck's Stove & Range Co., supra, 221 U.S. at page 448, 31 S.Ct. at page 501, 55 L.Ed. 797, "The classification, then, depends upon the question as to whether the punishment is punitive, in vindication of the court's authority, or whether it is remedial, by way of a coercive imprisonment, or a compensatory fine, payable to the complainant. Bearing these distinctions in mind, the prayer of the petition is significant and determinative." As the award of reparations was a "compensatory fine" payable to the employees, it was a judgment for civil contempt.

That the proceeding was one solely for criminal contempt is certain. Civil contempt was neither alleged, found nor even mentioned in the proceedings prior to the entry of the judgment. The petition instituting the proceeding was entitled, "Petition for Prosecution of Robert A. Pielet and David Pielet for Criminal Contempt of Court." The prayer of the petition was as follows:

"Wherefore, petitioner respectfully requests this Court to

"(1) Prosecute Robert A. Pielet and David Pielet for criminal contempt of the Court and to issue an order to Robert A. Pielet and David Pielet, requiring them to show cause why they should not be adjudged in criminal contempt of the Court for their failure and refusal to comply with the said judgment of the Court; and

"(2) Appoint Herman Grant and Ruth Provus, attorneys employed by the United States Department of Labor, and representing the said Administrator, as counsel to represent the Court, and to prosecute on behalf of the Court, Robert A. Pielet and David Pielet, for criminal contempt of the Court; and

"(3) Adjudge Robert A. Pielet and David Pielet in criminal contempt of this Court for their failure and refusal to comply with the said judgment of the Court and to punish them for such contempt in such manner as the Court may deem just and proper."

Thus, the prayer of the petition, as stated in the Gompers case (heretofore quoted), is "significant and determinative" as to the form of the contempt involved. But that is not all. On the same day that the petition was filed, the court entered an order appointing counsel to represent the court and to prosecute the respondents for criminal contempt. And on the same date an "Order to Show Cause" was entered, directing the respondents to show cause "why they should not be found guilty of criminal contempt of this Court by reason of their failure and refusal to obey, and disobedience of, the judgment of this Court aforesaid, and punished for said criminal contempt." The court both in its findings and conclusions of law recognized the proceeding as one for criminal contempt. In its conclusions the court stated that the respondents "have wilfully, deliberately, and contumaciously disobeyed and violated the terms of the judgment order entered by this Court on July 3, 1942," and that the respondents "have beyond a reasonable doubt been guilty of a criminal contempt of this Court as charged." That the proceeding was treated strictly as criminal is further evidenced by the fact that the court at the conclusion of the proceeding stated,

"The defendants will arise and come to the bar. Is there anything the defendants or their counsel care to say before imposition of sentence?" And in the decree appealed from it was "Adjudged and Decreed that the respondents and each of them are found guilty of criminal contempt as charged * * and each of them are sentenced to pay a fine in the amount of Five Thousand Dollars ($5,000.00) and the costs of this prosecution." This part of the judgment based on criminal contempt we have heretofore discussed.

In Gompers v. Buck's Stove & Range Co., supra, it was decided that a proceeding for civil contempt would not support a judgment for criminal contempt. Here we have the converse of that problem, that is, will a proceeding strictly criminal in its nature support a judgment appropriate only in a civil action? A rather plausible argument can be made that the respondents were not prejudiced for the reason that a higher degree of proof was required for criminal contempt, and that respondents having been found guilty of the criminal charge, they necessarily must have been guilty of civil contempt. That same argument could be made if B was charged in a criminal prosecution with an assault and battery upon A, with a judgment against him appropriate in a criminal prosecution, that is, a fine or imprisonment, and also a judgment that he compensate A for the injuries sustained by him. The point is, so we think, that a defendant in any action, whatever form it takes, is entitled to be advised of the charge against him, to be tried on the charge made and, if found guilty, to have a judgment against him appropriate thereto and not one common to some other character of proceeding.

Petitioner relies heavily upon United States v. United Mine Workers of America, 330 U.S. 258, 67 S.Ct. 677, 91 L.Ed. 884, in support of his contention that a court may punish for both criminal and civil contempt in the same proceeding. The court in that case stated, 330 U.S. at page 298, 67 S.Ct. at page 698, 91 L.Ed. 884, "Common sense would recognize that conduct can amount to both civil and criminal contempt. The same acts may justify a

court in resorting to coercive and to punitive measures. Disposing of both aspects of the contempt in a single proceeding would seem at least a convenient practice." But that pronouncement is readily distinguishable because it was based upon the court's view that both forms of contempt were appropriately before the court; in fact, it was held that the trial court had properly found the defendants guilty both of criminal and civil contempt. The fact, however, that the two forms of contempt may be joined in the same proceeding and a judgment rendered appropriate to each form furnishes no support for the proposition that a judgment for civil contempt can be supported by a proceeding which was initiated and carried through solely as a criminal contempt.

Finally, petitioner argues that in any event respondents were aware that reparations were sought on behalf of their employees because petitioner in a bill of particulars furnished respondents with the specific details regarding the alleged violations, including the amount of wages claimed to be due and owing. But this information, like the testimony of the employees who were witnesses, was consistent with the charge of criminal contempt. In fact, as already shown, the testimony of these witnesses was offered in support of the allegation that respondents' books were false, and there is nothing in the record to indicate that such testimony was offered for any other purpose. Petitioner in his brief states, "If respondents entertained any doubt that coercive sanctions in the way of back wages might be imposed, they were deliberately closing their eyes to the facts of which they had been placed on notice." This is a novel theory. Followed to its logical conclusion, it means that a defendant could be found guilty of a violation not charged if by keeping his eyes open he could have made discovery that he might be judged on such other charge.

Petitioner cites certain other cases in support of that portion of the judgment under discussion. McComb v. Jacksonville Paper Co., 336 U.S. 187, 194, 69 S.Ct. 497, 93 L.Ed. 599; McComb v. Norris, 4 Cir., 177 F.2d 357, and McComb v. Crane, 5 Cir., 174 F.2d 646. True, the court in those cases held that a court might properly award reparations to employees in an action by the Administrator, but all of these cases involved a proceeding for civil contempt. They are beside the issue and throw no light on the question here presented.

■ In our view, the court was without authority to include in its judgment a directive that respondents pay wages to their employees. The court awarded wage reparations "in the amounts as shown in Petitioner's Exhibit No. 26 herein." This exhibit lists the names of 119 employees, with the sum due each as calculated by a witness for petitioner. The total amount of said sums was $5,829.57. None of these 119 employees listed on this exhibit other than the twenty-one heretofore referred to were called as witnesses. Respondents contend in any event that there is no competent proof as to the amounts due the various employees listed. However, in view of our conclusion that the portion of the judgment predicated upon civil contempt was unauthorized, we see no reason to discuss petitioner's theory as to how he arrived at the amounts shown on this exhibit.

For the reasons stated, that portion of the judgment based upon criminal contempt, together with costs, is affirmed, and that portion based upon civil contempt is reversed.