**UNITED STATES of America, Appellee,**

v.

**Edwin Nathaniel GEBHARD, Appellant.**

**No. 24688.**

United States Court of Appeals, Ninth Circuit.

May 1, 1970.

Carl E. Stewart (argued), Los Angeles, Cal., for appellant.

David R. Nissen (argued), Asst. U. S. Atty., Wm. M. Byrne, Jr., U. S. Atty., Los Angeles, Cal., for appellee.

Before BARNES, KILKENNY and TRASK, Circuit Judges.

KILKENNY, Circuit Judge.

Appellant was found in contempt of court and was sentenced to four months in prison. He appeals. We affirm.

The factual background giving rise to appellant's conviction commenced when he appeared before a federal grand jury making inquiries into violations of the Federal Communications Act and other laws in the so-called "Friars Club" gambling investigation. He appeared on July 28th and August 3, 1967, and on such appearances declined to answer questions under his Fifth Amendment privilege. On August 10th, he was granted immunity under the provisions of 47 U.S.C. § 409(*l*) and ordered to testify. He answered a number of questions in connection with the installation and operation of peek holes at the Friars Club. He also testified as to his association with Albert B. Snyder in these activities. In April, 1968, he was tried and convicted on 15 counts of perjury in connection with the testimony given. The Court of Appeals reversed on six counts, leaving nine counts on which appellant stands convicted. United States v. Gebhard, 422 F.2d 281 (9th Cir. 1970).

While his perjury convictions were on appeal, appellant was called as a government witness in the Friedman case (which grew out of the grand jury Friars Club investigation) and again declined to answer questions on Fifth Amendment grounds. He was ordered to answer under the immunity provisions of § 409(*l*). He persisted in his refusal to answer and, as a result, judgments of acquittal were entered as to all defendants on the Federal Communications Act charges. Thereafter, he was charged with contempt of court. He was acquitted by the trial judge, evidently on the ground that his testimony might be used against him in a retrial, if his perjury convictions were reversed on appeal.

Subsequently, on May 14th, appellant was called as a government witness in the perjury and contempt prosecution of Albert B. Snyder, growing out of Snyder's alleged false testimony before the grand jury and his refusal to testify in a subsequent Friars Club trial under an immunity order. At Snyder's trial, appellant refused to answer questions concerning his activities with Snyder in the operation of the peek holes at the Friars Club. Again, the court directed Gebhard to answer the questions under the immunity provisions of § 409(*l*) on the ground that the immunity order of August 10th was still in full force and effect and, further, that appellant had testified at length concerning the same transaction and matter and consequently could never be prosecuted "for or on account of any transaction, matter or thing" concerning which he had been so compelled to testify. Appellant persisted in his refusal to answer.

Later, the government obtained an order directing appellant to show cause why he should not be held in contempt under the provisions of 18 U.S.C. § 401 (3), for disobeying the order to answer the questions. A hearing was conducted under the provisions of Rule 42(b), FRCrimP, in which proceeding appellant

was found guilty of contempt and now prosecutes this appeal.

## AUTHORITY OF COURT

Appellant urges that the Snyder case, in which appellant refused to testify, was not based upon nor did it grow out of a cause or proceeding intended to be included in 47 U.S.C. § 409(*l*), but was an ancillary proceeding, in which the court did not have the power to grant immunity and thus he was not in contempt in claiming his Fifth Amendment prerogative. Simply stated, appellant contends that the immunity granted when he was before the grand jury did not protect him when testifying as to the same general subject matter at the Snyder trial. On the other hand, the government contends that the immunity dated from the time Gebhard first testified before the grand jury in August, 1967. 47 U.S.C. § 409(*l*), states that "No person shall be excused from attending and testifying * * * in any cause or proceeding, criminal or otherwise, *based upon or growing out* of any alleged violation of this chapter * * * on the ground * * * that the testimony * * * required of him may tend to incriminate him or subject him to a penalty or forfeiture; but no individual shall be prosecuted or subjected to any penalty or forfeiture for or on account of any *transaction, matter or thing* concerning which he is compelled, after having claimed his privilege against self-incrimination, to testify or produce evidence * .* * except that any individual so testifying shall not be exempt from prosecution * * * for perjury committed in so testifying." (Emphasis added.) The government interprets this language as giving Gebhard permanent immunity from prosecution as to any charge based upon the transactions, matters or things about which he testified before the grand jury. Additionally, the government argues that the questions Gebhard refused to answer in the Snyder proceeding concerned "transactions, matters and things" to which he had testified in the grand jury inquiry of 1967. The government contends that Gebhard cannot now claim privilege against self-incrimination as to material he testified to before the grand jury in that his immunity existed forever as to those subjects. The lower court agreed with the latter theory.

 We agree with the government's theory that Gebhard's immunity as to subjects he testified to before the grand jury continued to be in effect. In Marcus v. United States, 310 F.2d 143, 146 (3d Cir. 1962), the court held that § 409 immunity was as extensive as the testimony itself, and that it was not limited to future prosecutions based on or growing out of Title 47. Brown v. United States, 359 U.S. 41, 47, 79 S.Ct. 539, 3 L.Ed.2d 609 (1959), teaches that language similar to that of § 409 limits only the class of witnesses protected, and not the scope of the protection. Thus, since the original grand jury investigation at which Gebhard testified clearly was based on Title 47 violations, his § 409 immunity prevents *any type* of prosecution based on any transaction, matter or thing to which he testified. Re Grand Jury Investigation of Giancana, 352 F.2d 921 (7th Cir. 1965), cert. denied 382 U.S. 959, 86 S.Ct. 437, 15 L.Ed.2d 36 (1965). The above cases do not speak to the power of a subsequent court to grant § 409 immunity in a case totally unrelated to a Title 47 proceeding. However, they do hold that a later court can invoke contempt proceedings against a witness for his refusal to answer questions relating to subjects in which he has been granted immunity. The self-incrimination privilege cannot be exercised where no possibility of prosecution exists. Kronick v. United States, 343 F.2d 436 (9th Cir. 1965). For that reason, Gebhard was here in contempt when he refused to answer questions as to subjects to which he was already immune after the court reminded him of his continuing immunity under § 409(*l*).

 We also hold that under a different theory the Snyder court had the power to grant Gebhard immunity *anew* under the auspices of § 409 since the Snyder proceeding itself was based upon and

grew out of a violation of Title 47. The Snyder proceeding, in which Gebhard refused to testify, was a trial for Snyder's perjury before the grand jury and for *contempt* for his refusal to testify at the Friedman trial even though granted § 409 immunity. Accordingly, Snyder's prosecution was in part directly connected with a violation of Title 47—refusal to testify under § 409 immunity—thereby giving the court the power to grant witnesses at that trial full § 409 immunity as to *any subject* to which they might testify. This follows even though the Snyder trial involved charges other than those arising under Title 47, since it was also a proceeding based upon or growing out of a violation of that title. Marcus v. United States, *supra*; United States v. Harris, 334 F.2d 460 (2d Cir. 1964), reversed on other grounds, 382 U.S. 162, 86 S.Ct. 352, 15 L.Ed.2d 240 (1965).

## THE 409 IMMUNITY ADEQUATELY PROTECTED APPELLANT

■ Appellant argues that the § 409 immunity is not coextensive with his Fifth Amendment rights since the Government could use his testimony in the Snyder case against him on a possible retrial of his conviction for perjury before the grand jury. That conviction was on appeal when Gebhard refused to testify in the Snyder trial. This circuit, in Kronick v. United States, *supra*, resolved this issue against the appellant. The court there construed the immunity provisions of 15 U.S.C. § 32 (Anti-trust laws), which are parallel to those of § 409 in both language and purpose, to mean that testimony given under immunity at a subsequent proceeding cannot be used in any prosecution for perjury based on testimony given under immunity at a prior proceeding. Thus, the government was barred from perfecting its perjury prosecution against Gebhard by the use of any testimony he might have given in the Snyder trial.

## DOUBLE JEOPARDY

■■ This contention is groundless. Neither appellant's conviction on the perjury charges, nor his acquittal in the original contempt proceedings forms a basis for a claim of double jeopardy in this contempt proceeding. The cases cited by appellant are readily distinguishable. It is well established that separate successive contempts are punishable as separate offenses. Bullock v. United States, 265 F.2d 683 (6th Cir. 1959), cert. denied 360 U.S. 909, 79 S.Ct. 1294, 3 L.Ed.2d 1260 (1959); Tobin v. Pielet, 186 F.2d 886 (7th Cir. 1951).[1]

The recent case of Ashe v. Swenson, 397 U.S. 436, 90 S.Ct. 1189, 1194, 25 L.Ed.2d 469 (April 6, 1970), throws immeasurable light on the doctrine of collateral estoppel as related to the Fifth Amendment guarantee against double jeopardy. The doctrine, as therein articulated by Justice Stewart, means: " * * * that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future law suit."

We do not believe the collateral estoppel doctrine can here be utilized in favor of appellant. This case is not concerned with the relitigation of an "ultimate fact". The two prosecutions are totally unrelated except insofar as each involved the Friars Club inquiry. The first contempt prosecution, the one on which appellant was acquitted, involved his conduct as a witness in the Friedman trial. The second prosecution, the one here before us, involved the grant of immunity and refusal to testify in the Snyder trial. Recalling that Gebhard's two refusals occurred in two cases, in two entirely separate and distinct places and at two widely separated times, we have no difficulty in holding that the doctrine of collateral estoppel as related to double jeopardy is not available to appellant.

Affirmed.

1. We express no opinion on whether the government, by vindictively excessive prosecutions under the immunity provisions of 409, might make an unconstitutional use of the statute.