In re SPECIAL SEPTEMBER, 1972 GRAND JURY, NO. 71 GJ 4509.

Eugene LUFMAN, Petitioner-Appellant,

v.

UNITED STATES of America, Respondent-Appellee.

No. 73–1916.

United States Court of Appeals, Seventh Circuit.

Argued Jan. 21, 1974.

Decided Aug. 7, 1974.

Frank G. Whalen, Chicago, Ill., for petitioner-appellant.

James R. Thompson, U.S. Atty., Jeremy D. Margolis, Asst. U.S. Atty., Chicago Ill., for respondent-appellee.

Before SWYGERT, Chief Judge, HASTINGS, Senior Circuit Judge, and CUMMINGS, Circuit Judge.

HASTINGS, Senior Circuit Judge.

This appeal concerns matters arising out of a criminal contempt proceeding

where the Government sought to compel a grand jury witness to produce voice exemplars for a grand jury. The grand jury was investigating gambling activities. The relevant facts are undisputed and will first be set out herein to properly frame the issues upon which review is sought.

On February 8, 1973, petitioner Eugene Lufman was granted immunity pursuant to Title 18, U.S.C. §§ 6002–6003, and was ordered to appear and testify before the Special September, 1972 Grand Jury in the United States District Court for the Northern District of Illinois, by the Honorable Richard J. Austin, Judge presiding. Lufman's testimony was sought in an attempt to secure evidence of criminal activity by other persons. Lufman refused to comply with the court's order after the grant of immunity had been given and persisted in invoking his rights under the Fourth and Fifth Amendments. Thereafter, on the same day, Judge Austin adjudged Lufman to be in civil contempt of court and remanded him to the custody of the United States Marshal until such time as he obeyed the February 8, 1973 order. The validity of this order of civil contempt and the finding of civil contempt were not further challenged by Lufman and are not in issue here. At the time of briefing and oral argument before our court Lufman was still serving his sentence under Judge Austin's order.

On July 17, 1973, Lufman was brought before the same grand jury in an attempt to secure identification evidence which could be used against Lufman himself, and for that purpose the Government sought to compel Lufman to give voice exemplars for the grand jury. Lufman's counsel's law partner, Mr. Reiff, appeared before the Honorable Edwin A. Robson, chief judge of the district court, at 10:30 a.m. that day, and informed him that Lufman's attorney, Mr. Frank G. Whalen, was currently in court before District Judge McMillen. Chief Judge Robson put the matter over until 2:00 p.m. that day so that Mr. Whalen could be present. At 2:00 p.m., Mr. Whalen was present in court and requested that the matter be continued in order that he might confer with his client. It was conceded that Lufman's counsel had received at least three weeks' notice of the Government's intended action concerning the giving of voice exemplars. Lufman was present and the chief judge offered to recess the hearing for 15 or 20 minutes to allow counsel to confer with Lufman. Counsel rejected this offer.

That same afternoon, Lufman, with his counsel present, was personally interrogated by the chief judge in open court and advised of the nature of the proceeding and warned of the penalty which might be imposed. In answer to a direct question by the court, Lufman expressly stated that he refused to give voice exemplars before the same grand jury, after a direct order of the court to do so had been given to him, and persisted in invoking his rights under the Fourth and Fifth Amendments. The chief judge thereupon found Lufman to be in direct criminal contempt of court and sentenced him to 177 days of confinement. Execution of sentence was stayed until Lufman had completed serving his term under Judge Austin's judgment of civil contempt.

Lufman subsequently filed an amended motion to vacate the order of July 17, 1973, and this motion was denied. Petitioner has appealed only from the judgment committing him for criminal contempt. We affirm.

The issues presented for review are (1) may a grand jury witness who has been held in *civil contempt* for refusing to testify about the criminal activity of other persons under a grant of immunity, be held in *criminal contempt* for refusing, five months later, to give voice exemplars which could be used against himself to the same grand jury; and (2) whether the trial court prejudicially erred in denying Lufman a continuance at the time of the criminal contempt hearing.

## I.

The civil contempt was predicated upon Lufman's refusal to give evidence before the grand jury relating to possible criminal activity by other persons. The second refusal, to furnish voice exemplars to the same grand jury, more than five months later, related to Lufman's own possible criminal activities. In our considered judgment, and we so hold, these two refusals constituted separate and distinct acts of contempt and could properly be punished as such under the well established authority hereinafter set out.

A decision of our own court generated the latest pronouncements by the Supreme Court concerning the production of voice exemplars for identification purposes before a grand jury.

In Dionisio v. United States, 7 Cir., 442 F.2d 276 (1971), we considered an appeal from the same district court and its chief judge. Dionisio and Smith had each been subpoenaed, with 18 others, to give voice exemplars for identification purposes before a grand jury. On Fourth and Fifth Amendment grounds, each refused to comply. The district court rejected both claims and adjudged them in contempt. On appeal, we affirmed the rejection of the Fifth Amendment claim but reversed on the Fourth Amendment claim for the reason that it required a preliminary showing of reasonableness before a grand jury witness could be compelled to furnish a voice exemplar. We further held that the proposed "seizures" would be unreasonable because of the large number of witnesses subpoenaed to produce the exemplars.

In United States v. Dionisio, 410 U.S. 1, 93 S.Ct. 764, 35 L.Ed.2d 67 (1973), the Court agreed that the compelled production of voice exemplars would not violate the Fifth Amendment privilege against compulsory self-incrimination since they were to be used for identification purposes only, and not for the testimonial or communicative content of the utterances. However, the Court held the Fourth Amendment claim to be in-

valid and reversed. It held that such subpoenas did not constitute a "seizure" within the meaning of the Fourth Amendment, and that the grand jury's directive to make the voice recording infringed no valid Fourth Amendment interest. It necessarily followed that our requirement of a preliminary showing of reasonableness was in error.

In a companion case on the same day, concerning a grand jury subpoena to require a witness to furnish handwriting exemplars to determine whether he was the author of certain writings, the Supreme Court in United States v. Mara, 410 U.S. 19, 93 S.Ct. 774, 35 L.Ed.2d 99 (1973), held that the specific and narrowly drawn directive to furnish a handwriting specimen, like the compelled speech disclosure upheld in *Dionisio, supra*, involved production of physical characteristics and violated no legitimate Fourth Amendment interest. Accordingly, our decision in the same case, 454 F.2d 580 (1971), in which we felt bound by our prior decision in *Dionisio*, was reversed. The district court's order requiring the witness to comply with the grand jury's request was held to be correct.

In the landmark case of United States v. United Mine Workers, 330 U.S. 258, at 298–299, 67 S.Ct. 677 at 698, 91 L.Ed. 884 (1947), a sharply divided Supreme Court said: "Common sense would recognize that conduct can amount to both civil and criminal contempt. The same acts may justify a court in resorting to coercive and to punitive measures." The Court held that a union and its president were each properly found guilty of both civil and criminal contempt and, except for modification of the fine imposed on the union, upheld the fines imposed on each contempt. *Id.* at 303–307, 67 S.Ct. 677. The Court followed the oft-cited case of Gompers v. Bucks Stove & Range Co., 221 U.S. 418, 441, 448–449, 31 S.Ct. 492, 55 L.Ed. 797 (1911), to the effect that "[s]entences for criminal contempt are punitive in their nature and are imposed for the purpose of vindicating the authority of

the court," 330 U.S. at 302, 67 S.Ct. at 700; and at 303–304, 67 S.Ct. at 701, that "[j]udicial sanctions in civil contempt proceedings may, in a proper case, be employed for either or both of two purposes: to coerce the defendant into compliance with the court's order, and to compensate the complainant for losses sustained."

Our court took notice of both United Mine Workers and Gompers in Tobin v. Pielet, 7 Cir., 186 F.2d 886, 888–890 (1951), written by the late Chief Judge Major. *Pielet* was cited in Bullock v. United States, 6 Cir., 265 F.2d 683, 695, cert. denied, 360 U.S. 909, 79 S.Ct. 1294, 3 L.Ed.2d 1260 (1959), where Chief Judge Allen stated: "Successive and separate contempts are punishable as separate offenses," citing Jennings v. United States, 8 Cir., 264 F. 399, 406 (1920). Further, in United States v. Gebhard, 9 Cir., 426 F.2d 965, 968 (1970), the court held a plea of double jeopardy to be groundless since "[i]t is well established that separate successive contempts are punishable as separate offenses," citing *Bullock* and *Pielet, supra.*

Finally, in Yates v. United States, 355 U.S. 66, 74–75, 78 S.Ct. 128, 133, 2 L.Ed. 2d 95 (1957), Mr. Justice Clark, speaking for the majority, wrote:

"Though there was but one contempt, imposition of the civil sentence for the refusals of June 26 is no barrier to criminal punishment for the refusals of June 30. The civil and criminal sentences served distinct purposes, the one coercive, the other punitive and deterrent; that the same act may give rise to these distinct sanctions presents no double jeopardy problem. Rex Trailer Co. v. United States, 350 U.S. 148, 150, 76 S.Ct. 219, 220, 100 L.Ed. 149 (1956); United States v. United Mine Workers, 330 U.S. 258, 299, 67 S.Ct. 677, 698, 91 L.Ed. 884 (1947). Clearly, if the civil and criminal sentences could have been imposed simultaneously by the court on June 26, as the *United Mine Workers* case holds, it scarcely can be argued that the court's failure to invoke the criminal sanction until June 30 was fatal to its criminal contempt powers. Indeed, the more salutary procedure would appear to be that a court should first apply coercive remedies in an effort to persuade a party to obey its orders, and only make use of the more drastic criminal sanctions when the disobedience continues. Had the court imposed a civil sentence and found petitioner guilty of criminal contempt on June 26, it could have postponed imposition of a criminal sentence until termination of the principal case. The distinction between that procedure and the one followed here is entirely formal." (Footnote omitted.)

As above stated, we affirm on this issue.

## II.

◼ Lufman complains that the trial court prejudicially erred in denying him a continuance at the time of the criminal hearing. He contends that he was deprived of his Sixth Amendment right to counsel. We have read the transcript of the proceedings held before the chief judge at that time and find that this contention is without merit.

It appears that Lufman's counsel, Frank G. Whalen, conceded that he had received more than three weeks' notice of the hearing date and of the Government's intention to seek the voice exemplars before the grand jury at that time. We have hereinabove set out in detail the events that occurred in this proceeding at 10:30 a. m. and 2:00 p. m. on July 17, 1973.

Counsel summarily rejected the court's offer to allow him 15 to 20 minutes for consultation with his client. Counsel was heard at length by the court; Lufman was available for immediate consultation; and no attempt was made by counsel to take advantage of this offer. Counsel's principle excuse for not having further conferred with his client during the three week period prior to the hearing was that counsel had been too busy. No showing was made as to why the time allotted was insufficient to talk further

with his client. No showing was made as to how much additional time was needed. No showing was made as to why a protracted conference or delay was necessary. Finally, no showing was made as to any detriment his client would otherwise suffer or sustain. On this appeal, counsel merely stands on his statement that he was a busy lawyer and required more time because he said so.

It is well settled that the granting of a continuance rests within the sound discretion of the trial court. Finding, as we do, that no adequate justification was presented requiring a continuance of the hearing, and in the absence of any demonstrated prejudice to the client, we hold that there was no denial of due process. The district court did not abuse its discretion in denying a further continuance at the time of the criminal contempt hearing.

In light of the foregoing, the finding of criminal contempt and sentence in the judgment appealed from is affirmed.

Affirmed.