STATE OF NEW JERSEY, PLAINTIFF-APPELLANT, v.
JOHN J. KENNY, DEFENDANT-RESPONDENT.

Argued March 4, 1975—Decided July 8, 1975.

18

Mr. *Matthew P. Boylan,* Director, Division of Criminal Justice, argued the cause for the appellant (*Mr. William F. Hyland,* Attorney General of New Jersey, attorney; *Mr. Alfred J. Luciani,* Deputy Attorney General, of counsel and on the brief; *Messrs. David S. Baime, George H. Henningsen, Robert J. Genatt, Russell D'Italia,* Deputy Attorneys General, on the brief).

*Mr. Donald A. Robinson* argued the cause for the respondent (*Messrs. Robinson, Wayne and Greenberg,* attorneys; *Messrs. Donald A. Robinson, Ronald J. Riccio, and Stuart M. Gladstone,* on the brief.)

The opinion of the court was delivered by

SCHREIBER, J. John J. Kenny was indicted by a State Grand Jury and convicted for extortion and misconduct as a Hudson County Freeholder arising out of his demanding and receiving the sum of $50,000 to modify some restrictions contained in a deed from Hudson County to the Reinauer Land Company. Upon appeal, the Appellate Division, one Judge dissenting, reversed. The State has appealed as of right. *R.* 2:2–1(a).

Kenny had previously testified in a federal criminal matter under the cloak of a federal immunity law, 18 *U. S. C.* § 2514. The Appellate Division held that that immunity deprived the State of its right to try Kenny and that the prosecutor's remarks in his opening and summation constituted reversible error. The primary issue before us concerns the effect of the federal immunity statute and we shall direct our attention to that question.

Briefly stated the pertinent facts are as follows:

In 1954 the Reinauer Land Company purchased some acreage in Secaucus from Hudson County. The deed contained numerous restrictions which limited the grantee's use of the property. Subsequent attempts to sell the land were frustrated because of the restrictions and efforts to have Hudson County remove the limitations failed.

In 1965 a contract for the sale of property was entered into with the Mackman Realty Corporation, subject to removal of the deed restrictions. Under the terms of the agreement, Reinauer Land Company had 6 months to effect elimination of the restrictions, and, if unsuccessful, then the Mackman Realty Corporation had one year within which to accomplish that result. The Land Company's efforts failed. The Realty Corporation took over. H. B. Mack, a principal of the Realty Corporation, advised Reinauer that it would cost $50,000 to obtain release of the restrictions from the County. This was the price Kenny, who was then a Hudson County Freeholder, had fixed. The Land Company and the Realty Company put up the money which was paid to Angelo Sarubbi who in turn delivered the money to Kenny. Thereupon the Board of Freeholders voted to eliminate the restricttions. A quitclaim deed was delivered to Reinauer Land Company on December 1, 1966 and the sale from Reinauer Land Company to Mackman Realty Corporation was consummated on December 30, 1966.

The foregoing facts led to Kenny's indictment by the State Grand Jury on September 15, 1970 for extortion (*N. J. S. A.* 2A:105–1) and misconduct in office (*N. J. S. A.* 2A: 85–1).

Kenny and eleven others were indicted by a federal grand jury on November 15, 1970. The indictment contained some 34 counts. The gravamina of the federal counts were conspiracies to extort and bribe, and extortion in connection with public construction projects of Hudson County

and Jersey City. None of the matters involved the Reinauer transaction.

In the federal proceedings Kenny's trial was severed from that of the codefendants. During their trial he was granted transactional immunity in accordance with 18 *U. S. C.* § 2514 and testified on behalf of the government. Details of the direct and cross-examination and colloquy of the court and counsel are set forth in the Appellate Division opinion and need not be repeated. Suffice it to say that on cross-examination Kenny was asked and responded to a series of questions which covered the subject matter of the State indictment.[1]

The majority of the Appellate Division in an opinion by Judge Bischoff found that Kenny's testimony before the federal court was compelled, contrary to the finding of the trial judge and the dissenting opinion. At the oral argument before this Court the State conceded that Kenny's testimony was compelled. Upon our own independent review of the evidence we have come to the same conclusion and essentially agree in this respect with the analysis in Judge Bischoff's opinion.

The State's contention is that the transactional immunity granted under 18 *U. S. C.* § 2514 applies only to that testimony adduced at the federal trial which is substantially related to the offense for which transactional immunity has been granted. A State prosecution for offenses related to that testimony would be impermissible. The witness would be entitled to *use* immunity for any other statements which

[1]In passing we note that the evidentiary rule in the Third Circuit sanctions within the discretion of the trial court cross-examination concerning prior misconduct of a witness. *United States v. Sweeney*, 262 *F.* 2d 272 (3 *Cir.* 1959) ; *United States v. Farries*, 328 *F. Supp.* 1034 (*M. D. Pa.* 1971), *aff'd*, 459 *F.* 2d 1057 (3 *Cir.*), *cert.* den. 409 *U. S.* 888, 93 *S. Ct.* 143, 34 *L. Ed.* 2d 145 (1972). See also *Fed. R. Evid.* § 608(b) (effective as of July 1, 1975). Cross-examination of Kenny on the Reinauer land deal appears to have been proper.

he had been compelled to make in the federal trial during his examination, whether on direct or cross-examination. Since the State had not used Kenny's testimony, or data obtained therefrom, it contends that the prosecution was not barred.

The ultimate question is the interpretation to be given to 18 *U. S. C.* § 2514. For that answer we must look to the act, legislative history and prior decisions.

Title 18 *U. S. C.* § 2514[2] reads as follows:

"Whenever in the judgment of a United States attorney the testimony of any witness, or the production of books, papers, or other evidence by any witness, in any case or proceeding before any grand jury or court of the United States involving any violation of this chapter or any of the offenses enumerated in section 2516, or any conspiracy to violate this chapter or any of the offenses enumerated in section 2516 is necessary to the public interest, such United States attorney, upon the approval of the Attorney General, shall make application to the court that the witness shall be instructed to testify or produce evidence subject to the provisions of this section, and upon order of the court such witness shall not be excused from testifying or from producing books, papers, or other evidence on the ground that the testimony or evidence required of him may tend to incriminate him or subject him to a penalty or forfeiture. No such witness shall be prosecuted or subjected to any penalty or forfeiture for or on account of any transaction, matter or thing concerning which he is compelled, after having claimed his privilege against self-incrimination, to testify or produce evidence, nor shall testimony so compelled be used as evidence in any criminal proceeding (except in a proceeding described in the next sentence) against him in any court. No witness shall be exempt under this section from prosecution for perjury or contempt committed while giving testimony or producing evidence under compulsion as provided in this section."

The statute prescribes four conditions precedent to an effective immunity grant: (1) the decision of the United States Attorney that the evidence is necessary in the public interest; (2) approval of that decision by the Attor-

---

[2]This statute was repealed as of December 1974 by the Organized Crime Control Act of 1970. *Pub. L.* 91–452, §§ 227(a), 260, 84 *Stat.* 930, 931.

ney General; (3) the desired evidence relates to a violation of sections 2514 or 2516 or conspiracies to violate such offenses; and (4) the court upon application of the United States Attorney orders the witness to testify.

Once the conditions precedent for the grant of the immunity have been satisfied, the witness shall not be prosecuted "on account of *any* transaction, matter or thing concerning which he is compelled . . . to testify . . . nor shall testimony so compelled be used as evidence in *any* criminal proceeding . . . against him in *any* court." (Emphasis supplied). The language is broad, and on its face the immunity would appear to be applicable to any transaction about which he was forced to testify.

Legislative history of 18 *U. S. C.* § 2514 throws no interpretative light on the statute.[3] However, some historical background is helpful.

██ In the process of that review it is essential to differentiate between a use and transactional immunity. The Fifth Amendment privilege against compulsory self-incrimination is that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself". Immunization coextensive with that privilege contemplates that the compelled testimony and information derived directly or indirectly from that evidence shall not be used against the witness. That protection is commonly referred to as "use" immunity. Transactional immunity affords the witness protection from prosecution for or conviction of the offense related to the testimony. It is not limited to the use of the particular testimony or the fruits thereof.

The differentiation was pointedly made in *Kastigar v. United States,* 406 *U. S.* 441, 92 S. Ct. 1653, 32 *L. Ed.* 2d 212 (1972), where the Court wrote:

---

[3]Section 2514 was enacted as part of the Omnibus Crime Control and Safe Streets Act of 1968. Neither the Senate and House hearings and reports nor congressional debates contain any explanation of the scope and effect of the immunity after it has been granted.

". . . Transactional immunity, which accords full immunity from prosecution for the offense to which the compelled testimony relates, affords the witness considerably broader protection than does the Fifth Amendment privilege. The privilege has never been construed to mean that one who invokes it cannot subsequently be prosecuted. Its sole concern is to afford protection against being 'forced to give testimony leading to the infliction of "penalties affixed to . . . criminal acts." ' Immunity from the use of compelled testimony, as well as evidence derived directly and indirectly therefrom, affords this protection. It prohibits the prosecutorial authorities from using the compelled testimony in *any* respect, and it therefore insures that the testimony cannot lead to the infliction of criminal penalties on the witness." 406 *U. S.* at 453, 92 S. Ct. at 1661, 32 *L. Ed.* 2d at 222.

The same distinction is noted in *In re Zicarelli,* 55 *N. J.* 249, 265 (1970), *aff'd,* 406 *U. S.* 472, 92 S. Ct. 1670, 32 *L. Ed.* 2d 234 (1972), the dissenting opinion of Mr. Justice Brennan in *Piccirillo v. New York,* 400 *U. S.* 548, 568–569, 91 S. Ct. 520, 27 *L. Ed.* 2d 596, 609 (1971), and *Varon, Searches, Seizures and Immunities* 737–739 (2 ed. 1974).

In 1868 a federal immunity act was enacted which provided that the testimony of a witness shall not be used as evidence in any criminal proceeding against such witness in any court. 15 *Stat.* 37. In *Counselman v. Hitchcock,* 142 *U. S.* 547, 12 S. Ct. 195, 35 *L. Ed.* 1110 (1892), the Supreme Court nullified that act because the fruits of the testimony could be used against the witness. It held that legislative immunity to be constitutionally permissible must be coextensive with the Fifth Amendment privilege against self-incrimination, a position which has recently been reaffirmed. *Kastigar v. United States, supra.*

Congress reacted to the *Counselman* decision by enacting a transactional immunity law, the Compulsory Testimony Act of 1893, 27 *Stat.* 443, to support the investigatory power of the Interstate Commerce Commission. Thereafter Congress enacted more than 50 immunity statutes, including the one in question, 18 *U. S. C.* § 2514, which were modeled insofar as scope is concerned after the Compulsory Testimony Act. It has been said that: "The 1893 statute

has become part of our constitutional fabric and has been included 'in substantially the same terms, in virtually all of the major regulatory enactments of the Federal Government.' *Shapiro v. United States,* 335 *U. S.* 1, 6, 68 S. Ct. 1375, 1378, 92 *L. Ed.* 1787, 1792." *Ullmann v. United States,* 350 *U. S.* 422, 438, 76 S. Ct. 497, 506, 100 *L. Ed.* 511, 524 (1956). For a history of the federal immunity acts, see Comment, "The Federal Witness Immunity Acts in Theory and Practice: Treading the Constitutional Tightrope," 72 *Yale L. J.* 1568 (1963).

In *Brown v. Walker,* 161 *U. S.* 591, 16 S. Ct. 644, 40 *L. Ed.* 819 (1896), the Supreme Court upheld the constitutionality of the Compulsory Testimony Act immunity and made the following pertinent comment:

"The act in question contains no suggestion that it is to be applied only to the Federal courts. It declares, broadly, that 'no person shall be excused from attending and testifying . . . before the interstate commerce commission . . . on the ground . . . that the testimony . . . required of him may tend to incriminate him,' etc. 'But no person shall be prosecuted or subjected to any penalty or forfeiture for or on account of any transaction, matter or thing concerning which he may testify,' etc. It is not that he shall not be prosecuted for or on account of any *crime* concerning which he may testify, which might possibly be urged to apply only to crimes under the Federal law and not to crimes, such as the passing of counterfeit money, etc., which are also cognizable under state laws; but the immunity extends to any *transaction, matter, or thing* concerning which he may testify, which clearly indicates that the immunity is intended to be general and to be applicable whenever and in whatever court such prosecution may be had." 161 *U. S.* at 607–608, 16 S. Ct. at 651, 40 *L. Ed.* at 825.

The holding in *Brown v. Walker* was not challenged until *Ullmann v. United States, supra,* in which Mr. Justice Frankfurter reaffirmed *Brown* and approvingly recited the above quote. 350 *U. S.* at 434–435, 439, 76 S. Ct. at 504–505, 507, 100 *L. Ed.* at 522–523, 525.

A comprehensive review of the federal immunity statutes was made by the National Commission on Reform of Federal Criminal Laws. This led to the repeal of the Compul-

sory Testimony Act, 18 *U. S. C.* § 2514, and other comparable federal immunity statutes. Organized Crime Control Act of 1970, 18 *U. S. C.* § 6001 *et seq.*

The *Working Papers of the National Commission on Reform of Federal Criminal Laws* (Vol. II 1970), in commenting on the Compulsory Testimony Act noted:

"Perhaps unknowingly, the Congress in the 1893 statute gave the witness *two* distinct protections not present in the statute nullified in the *Counselman* case. The key phrase is the one which reads 'No person shall be prosecuted . . . for or on account of *any transaction, matter or thing concerning which he may testify* . . . .' The first protection, flowing necessarily from this phrase, was to protect the witness against any future prosecution based not only on his actual testimony but also based on any leads or tips gained by the prosecution from that testimony. The second protection, far more broad, was to shield the witness from *any* future prosecution *logically related* to his compelled testimony. There was no need to show any actual connection between the compelled testimony and leads gained therefrom, and the particular investigative techniques and evidence supporting the future prosecution.

"Read literally, the key phrase would bar future incriminating use of independent evidence already in the hands of the prosecution at the time of disclosure, provided only that the witness be able to show that his compelled testimony did bear a logical relationship to the *transaction* which was the subject of the future prosecution. In this sense the key phrase in the Interstate Commerce Commission immunity statute could truly be said to operate as an 'immunity bath.'

. "Since the date of *Brown v. Walker* in 1896, which sustained the constitutionality of the 1893 statute, Congress has enacted more than 50 immunity statutes. Although they very [*sic*] in some respects, all of the statutes retain the key phrase of the ICC statute: 'no person shall be prosecuted . . . for or on account of any transaction, manner [*sic*] or thing concerning which he may testify . . . .' Further, until very recently, there has been virtually no discussion of this key phrase and its apparent effect of not only immunizing the 'fruits' of compelled testimony but also of giving the witness an 'immunity bath' which will bar use of independent evidence also." (Vol. II at 1412–1413).

In recommending needed reforms of the various federal immunity statutes, the *Working Papers of the National Commission* recognized that statutes like 18 *U. S. C.* § 2514 are too broadly worded:

". . . Absolute immunity, acting like a *pardon*. for all. offenses related to the testimony, not only exonerates the witness for his offense under the statutes being administered by the agency conferring immunity, but also exonerates him for his offenses under other Federal or State statutes in all instances where. the offense relates to the area concerning which he testified. Under absolute immunity, a mistake in granting immunity is very costly to society." (Vol. II at 1431).

Senate Report No. 91–617 at 53, December 18, 1969, which accompanied S. 30, the bill which proposed the repeal of the Compulsory Testimony Act and limitation of the life of 18 *U. S. C.* § 2514 to four years after the effective date of the act, referred to transactional immunity statutes of this type as follows:

". . . Normally, the immunity will extend to *all* matters substantially related to *any* matter revealed in a responsive answer." (Emphasis supplied).

Judicial interpretation of the extent of the transactional immunity granted supports the view expressed in the *Working Papers of the National Commission* and the Senate Report.

The precise issue was discussed in *Marcus v. United States,* 310 *F.* 2d 143 (3 Cir. 1962), *cert.* den. 372 *U. S.* 944, 83 S. Ct. 933, 9 *L. Ed.* 2d 969 (1963). Marcus had refused to testify before a federal grand jury with respect to the use of telephones to transmit gambling information. The government moved for an order to compel Marcus to testify in exchange for immunity under 47 *U. S. C.* § 409(*l*). That section reads the same as 18 *U. S. C.* § 2514 except that it authorizes immunity with respect to violations of the Communications Act of 1934 instead of offenses under 18 *U. S. C.* § 2516. The court ordered Marcus to testify. After refusal, he was tried and convicted for contempt. In upholding the judgment of contempt, the Circuit Court held:

". . . But so soon as he testifies, under compulsion of the Court's order, he automatically will receive immunity, from both federal and

State prosecution, for any matter or thing concerning which he in fact testifies, so long as his testimony is not volunteered but is elicited by questions which the Court has ordered him to answer. *This would include matters affecting his income tax liability or any other matters brought out as part of the grand jury inquiry.* It is of course the task of the government attorneys to ensure that the witness is not given an immunity broader than is necessary and expedient to advance the important objectives of the grand jury's investigation." (Emphasis supplied). 310 *F.* 2d at 148.

The *Marcus* language, although dictum, clearly and unequivocally states that once immunity has been granted, the witness is entitled to protection with respect to any facet of his compelled testimony.

*In United States v. Gebhard,* 426 F. 2d 965 (9 *Cir.* 1970), the defendant, after having been granted immunity under 47 *U. S. C.* § 409(*l*), had refused to testify as a witness at a perjury trial. He was held in contempt. In affirming, the Circuit Court wrote:

". . . Thus, since the original grand jury investigation at which Gebhard testified clearly was based on Title 47 violations, his §409 immunity prevents *any type* of prosecution based on *any* transaction, matter or thing to which he testified." (Emphasis supplied). 426 *F.* 2d at 967.

The Supreme Court of Pennsylvania in *Petition of Specter,* 439 *Pa.* 404, 268 *A.* 2d 104 (1970), held that the Pennsylvania transactional immunity statute should be construed in the same manner as the federal Compulsory Testimony Act. It held that:

". . . The immunity relates to the *transactions, matters or things* concerning which testimony is compelled, not merely to the specific crimes which the Grand Jury was called to investigate. The immunity is as extensive as the testimony given, Marcus v. United States, 310 F. 2d 143 (3d Cir. 1962) ; by its terms it extends to '*any penalty or forfeiture* for or on account of *any transaction, matter, or thing*' concerning which he is compelled to testify. Thus the coverage of the statute is broad enough to include *any offense or crimes* disclosed by the compelled testimony." 268 *A.* 2d at 109.

The State relies principally on four cases for the proposition that before immunity is available there must be a substantial relationship between the subject matter of the witness' testimony at the initial federal trial and the offense for which immunity was properly granted at that trial. None of these decisions so hold.

It relies on *Marcus v. United States, supra; In re Vericker,* 446 F. 2d 244 (2 Cir. 1971); *United States v. Harris,* 334 F. 2d 460 (2 Cir. 1964), rev'd on other grounds, 382 *U. S.* 162, 86 S. Ct. 352, 15 *L. Ed.* 2d 240 (1965); and *Heike v. United States,* 227 *U. S.* 131, 33 S. Ct. 226, 57 *L. Ed.* 450 (1913).

In *Heike v. United States, supra,* Heike testified before a federal grand jury investigating alleged breaches of the Sherman Anti-Trust Act. The investigatory act contained provisions for automatic immunity on account of any transaction concerning which he testified. 32 *Stat.* 904.[4] The anti-trust proceedings involved transactions of the American Sugar Refining Company, of which Heike was an officer. Before the grand jury Heike testified about the Company's formation and produced some Company records. He was subsequently indicted for revenue frauds because of reporting false sugar weights. The general subject matter of the anti-trust investigation was "wholly different" than the individual criminal matter. The specific areas that Heike had testified to before the grand jury were at best remotely connected with the fraud with which he was charged. In holding that transactional immunity did not apply, Mr. Justice Holmes concluded that:

". . . Not only was the general subject of the former investigation wholly different, but the specific things testified to had no connection with the facts now in proof much closer than that all were dealings of the same sugar company." 227 *U. S.* at 143, 33 S. Ct. at 228, 57 *L. Ed.* at 455.

---

[4]Repealed by the Organized Crime Control Act of 1970, 18 *U. S. C.* § 6001 *et seq.*

*Heike* stands for the proposition that there must be a substantial connection between the matter initially testified to and the crime for which immunity is claimed at a subsequent trial. In the instant case it is beyond peradventure that the compelled testimony was substantially related to the subject matter of the State indictment.

*Marcus, Vericker* and *Harris* involved refusal of witnesses to testify before grand juries. In grand jury proceedings, it is necessary to ascertain the relationship between the question and the statutory offense on the basis of which immunity may be granted. If there is none, then immunity provisions of the act cannot become operative. *Bursey v. United States,* 466 *F.* 2d 1059 (9 *Cir.* 1972). As the court in *Bursey* so aptly stated:

". . . In passing upon an immunity application, the court is confined to an examination of the application and the documents accompanying it for the purpose only of deciding whether or not the application meets the procedural and substantive requirements of the authorizing statute." 466 *F.* 2d at 1073.

If the requirement is not met, the witness cannot be held in contempt for refusal to answer. On the other hand if the information sought is so related to the subject matter of the grand jury investigation for which immunization was properly granted, refusal to answer would justify a contempt citation. *Marcus, Vericker* and *Harris* simply hold that, in a grand jury investigation, before the witness may be anointed with immunity and forced to testify or face contempt, the offense which is being investigated must be one for which immunity is available and the subject matter of the questions must be related to that offense.

Grand juries may be and often are investigating a number of different offenses, some of which may not have the protective cloak of immunity. To permit a grand jury, which is not under court control, to obtain whatever information it desires even though unrelated to the listed offenses with respect to which immunity was granted, would in effect enlarge the

scope of the immunity provision. This is a far cry from a trial, such as here, where the conditions precedent to the grant of immunity have been satisfied and the witness' examination, subject to court control, is properly conducted. At the trial evidence is limited to the offense charged (for which immunity has been granted) and to related relevant matters. In this manner, there is an assurance that immunity is not extended to matters not relevant to the proceeding.

There is dictum in the opinion of the Second Circuit Court of Appeals in *Harris,* which is quoted in dictum in the Second Circuit's decision in *Vericker* to the effect that immunity extends to the compelled testimony "insofar as that testimony bears a substantial relation to the subject matter of the immunity provision." *United States v. Harris, supra,* 334 *F.* 2d at 462. The *Harris* case cites *Heike v. United States, supra,* as authority for this proposition. But as noted above, *Heike* was concerned with the relationship between the compelled testimony and the offense with which the witness was subsequently charged.

Congress intended that the immunity, being transactional, should not be lightly conferred. The United States Attorney, after determining that the testimony was necessary and receiving approval of the Attorney General, had to obtain court approval. That approval in the first instance would not be given unless the contemplated testimony was relevant to the subject matter being pursued by the government, whether before a grand jury or at a trial. Thus, a witness purportedly immunized could properly, at either a grand jury investigation or at a trial, seek to be relieved from answering a question because such relevance was absent, and the reviewing court (in the grand jury situation) or the trial court would be guided by that standard in ruling on the matter.

However, once a witness is directly ordered by a court to answer questions with an assurance of the statutory immunity in a trial in which the only subject matter is one

for which immunity is applicable, and he does so in obedience of the order under fear of contempt, he is no longer subject to the peril of the lack of relevance between the question and the subject matter of the proceeding in respect of which he was granted immunity. The witness having been compelled to answer, it would obviously be contrary to the statutory intent to deny him the full dimensions of the stipulated immunity. See *Marcus v. United States, supra,* and the legislative history re the repeal of 18 *U. S. C.* § 2514, *supra.*

All conditions precedent to a grant of immunity under 18 *U. S. C.* § 2514 to Kenny had been satisfied at the time he testified in the federal trial. The questions on cross-examination and his responses which involved his misconduct in connection with removal of the deed restrictions on the Secaucus property owned by the Reinauer Land Company constituted proper inquiries and were admittedly compelled. Thereafter he could not be subjected to a State prosecution because of the "transaction" concerning which he was compelled to testify. The compelled testimony related substantially to the State prosecution. The transactional immunity granted under 18 *U. S. C.* § 2514 applies.

In view of this determination it is not necessary to consider the other grounds projected.

The judgment is affirmed.

CLIFFORD, J. (concurring). Quite apart from the immunity issue I would reach the same result as the majority based upon the alternative holding of the Appellate Division, 128 *N. J. Super.* 94, 108–11 (App. Div. 1974), that "[t]he prosecutor here went beyond the evidence and the indictment in both his opening statement and his summation. The departure was highly prejudicial to defendant, sufficient standing alone to justify a reversal." 128 *N. J. Super.* at 111. My views on this subject were set forth (probably at too great length, given their conspicuous lack

of influence) in a couple of dissents last term, *State v. Di-Paglia,* 64 *N. J.* 288, 298 (*N. J.* 1974); *State v. Perry,* 65 *N. J.* 45, 55 (*N. J.* 1974), and I will not enlarge on them here in light of Judge Bischoff's perceptive analysis of the matter below.

With respect to the immunity question I have some concern about what the majority says and what is left unsaid. I understand the Court's position to be that transactional immunity is as extensive as the testimony given, regardless of whether the crime testified to falls within the ambit of the subject matter of either the statute's immunity provisions or the application for immunity made by the United States Attorney and approved by the Attorney General of the United States. This position runs counter to rational accommodation between the Fifth Amendment and the legitimate demand of government to obtain necessary information about criminal conduct which Congress intended to be furnished by such immunity statutes as 18 *U. S. C.* § 2514.

Immunity statutes are designed to aid in the gathering of information otherwise unreachable by reason of the privilege against compelled self-incrimination. Common sense therefore dictates that § 2514, for lack of a more illuminating legislative history, should be deemed a prosecutorial tool designed to be used with deliberation by the government in compelling testimony on subject matter the government believes necessary for the public good, rather than a device exclusively in the control of the defendant or his counsel. Judicial sights should be trained on the "grant" or authorization signed in the name of the United States Attorney General. *Bursey v. United States,* 466 *F.* 2d 1059 (9th Cir. 1972), presents an excellent analysis of the issue. As long as there exists a substantial relationship between the subject matter of the "grant" or the Attorney General's letter of approval and the crime to which testimony relates, then the witness is immunized from any subsequent prosecution.

At least three advantages flow from this approach. Firstly, the witness is prevented from taking an "immunity bath" and stating on the record crimes extraneous and irrelevant to the proceeding in which he testifies. Secondly, with many of the offenses enumerated in 18 *U. S. C.* §§ 2514 and 2516 bearing little relation to one another, no reason exists to assume that Congress believed the public interest would be served by having the request for transactional immunity pertaining to one crime apply also to other crimes listed therein, let alone apply to those crimes testified to but which could not be the subject of immunity because not included in the statutory language. See Comment, 48 *N. Y. U. L. Rev.* 171, 186 (1973). And finally, this approach is better suited for testimony received during trial rather than during the grand jury inquiries on whose case law the majority leans. Whereas the inordinately broad protection conferred by the majority opinion might well be in order because of the potential wide range of any grand jury probe, it should not *ipso facto* be extended to a trial proceeding which has prescribed bounds and defined issues and at which the immunized witness may not even be a defendant. See *Bursey, supra,* 466 *F.* 2d at 1076.

However, the advantages of this position that would normally accrue to the State in prosecutions of the instant sort are not available here. The letter of approval from the Assistant Attorney General and the United States Attorney authorized the "grant" of immunity extending only to the crimes delineated in 18 *U. S. C.* § 2516(1)(c) and (g). Incorporated by reference in § 2516(1)(c) is 18 *U. S. C.* § 1952(a) which forbids, *inter alia,* use of any facility in interstate commerce to "promote, manage, establish [and], carry on * * * any unlawful activity." "Unlawful activity," in turn, embraces extortion in violation of the laws of the State in which committed. 18 *U. S. C.* § 1952(b)(2). The subject matter relationship between the New Jersey crime of extortion charged in the indictment

herein and the provisions of the "grant" is obvious. The State prosecution is therefore barred on this ground.

CLIFFORD, J., concurring in the result.

*For affirmance*—Chief Justice HUGHES, Justices MOUN-TAIN, SULLIVAN, PASHMAN, CLIFFORD and SCHREIBER and Judge CONFORD—7.

*For reversal*—None.