IN THE MATTER OF
CARL "PAPPY" IPPOLITO, APPELLANT.

Argued November 15, 1977—Decided February 22, 1978.

. *Mr. Robert F. Simone,* of the Pennsylvania bar, argued the cause for appellant (*Mr. Pasquale Talarico,* attorney).

*Mr. Michael R. Siavage* argued the cause for respondent State of New Jersey, Commission of Investigation.

The opinion of the Court was delivered by

SULLIVAN, J. ▇▇▇ Carl "Pappy" Ippolito was subpoenaed to appear before the State Commission of Investigation (SCI), a statutory body created by L. 1968, c. 266; *N. J. S. A.* 52:9M–1 *et seq.*[1] When he appeared he stated, through counsel, that it was his intention to testify if he were "given immunity to any questions that might tend to incriminate him under his Fifth Amendment rights." Such immunity was not granted although the SCI had statutory power to grant "use and fruits" immunity[2] from criminal prosecution or penalty. *N. J. S. A.* 52:9M–17.[3]

---

[1]For a discussion of the SCI's statutory purpose, powers and method of operation see *Catena v. Seidl,* 65 *N. J.* 257, 259–260 (1974) ; see also *In re Zicarelli,* 55 *N. J.* 249, 258 (1970), aff'd 406 *U. S.* 472, 92 *S. Ct.* 1670, 32 *L. Ed.* 2d 234 (1972).

[2]"Use and fruits" immunity protects the witness against the use of the compelled testimony and the fruits thereof. The witness, however, remains subject to prosecution for the offense to which the compelled testimony relates. *In re Zicarelli, supra,* n. 1, 55 *N. J.* at 265; *State v. Kenny,* 68 *N. J.* 17, 23–30 (1975).

[3]The immunity would extend to federal prosecution or prosecution in any other state as well. See, *Murphy v. Waterfront Commission,* 378 *U. S.* 52, 84 *S. Ct.* 1594, 12 *L. Ed.* 2d 678 (1964).

Prior to questioning Ippolito, counsel for the SCI stated for the record that "The Commission is presently conducting an investigation into organized crime and racketeering in the State of New Jersey. You have been subpoenaed in connection with that investigation." Ippolito was then warned that his testimony could be used against him in a court of law and "[i]f you feel that your answer may tend to incriminate you," he could refuse to answer.

Some 182 questions were put to him at the SCI hearing. He refused to answer 98 of them claiming his Fifth Amendment privilege against self-incrimination. He was brought before the Superior Court where the SCI challenged his right to invoke the Fifth Amendment on the ground that the questions which he had refused to answer were not *per se* incriminatory.

During the court proceedings Ippolito withdrew his refusal to answer some of the questions. As to others the trial court sustained his refusal to answer certain questions which the SCI does not dispute. We are concerned only with 33 "Do you know * * *"–type of questions which Ippolito refused to answer without giving an explanation of the basis for his claim of incrimination. However, it seems to be undisputed that all or substantially all of the persons named in the "Do you know"–questions were known or suspected members of organized crime.

The trial court sustained Ippolito's refusal to answer these questions, saying:

* * * If you're going to ask this man whether he knows eight or ten or twelve or fifteen people, all of whom at least have a reputation of being involved in organized crime, isn't that total picture then incriminatory?

* * * * * * * *

Don't you think that if a person admits being friendly with eight or ten or twelve known Mafia people, that he has reasonable cause to apprehend that he's going to be criminally prosecuted? That's what the Rule says.

 

On an appeal by the SCI from the trial court's ruling as to the 33 "Do you know"–questions, the Appellate Division reversed and remanded. In an opinion reported in 145 *N. J. Super.* 262 (1976), it held that the "Do you know"–questions, whether considered singly or in the context of all the questioning, without more, did not constitute a basis for claiming self-incrimination. The Appellate Division held that more must be established before a determination of self-incrimination can be made. It therefore reversed and remanded to the trial court "where the witness must demonstrate a basis for the claim of self-incrimination." *Id.* at 268. Ippolito filed a notice of appeal to this Court as of right. *R.* 2:2–1(a). We reverse.

 In this State the privilege against self-incrimination, although not written into our State Constitution, is firmly established as a part of our common law and is now incorporated in our Rules of Evidence, *N. J. S. A.* 2A:84A–1 *et seq.;* see *Evid. R.* 23, 24 and 25; *State v. Vinegra,* 73 *N. J.* 484, 488–489 (1977). Also, the Fifth Amendment privilege against self-incrimination in the United States Constitution is applicable to any state proceeding through the due process clause of the Fourteenth Amendment. *Malloy v. Hogan,* 378 *U. S.* 1, 84 *S. Ct.* 1489, 12 *L. Ed.* 2d 653 (1964). Application of the Fifth Amendment privilege in state proceedings must be consistent with federal constitutional standards. The privilege is available to any witness as well as to parties and persons accused, and concededly applies to SCI investigations and hearings.

 A witness' mere claim of the privilege does not establish the hazard of incrimination. It is for the court to say whether, under all of the circumstances, silence is justified. *Hoffman v. United States,* 341 *U. S.* 479, 486, 71 *S. Ct.* 814, 818, 95 *L. Ed.* 1118, 1124 (1951). However, to be incriminating it is not required that the answer, standing alone, suffice to convict the witness of a crime. *In re Pillo,* 11 *N. J.* 8, 18 (1952). If the answer would furnish a link

in the chain of evidence needed to prosecute, the privilege may be invoked. To sustain the privilege it need only appear, considering the implications of the question and the setting in which it is asked, that a responsive answer to the question or explanation of why it cannot be answered might be dangerous because injurious disclosure could result. *Hoffman, supra,* 341 *U. S.* at 486–487, 91 *S. Ct.* 814.

Rule 24 of the New Jersey Rules of Evidence defines incrimination as:

Within the meaning of this article, a matter will incriminate (a) if it constitutes an element of a crime against this State, or another State or the United States, or (b) is a circumstance which with other circumstances would be a basis for a reasonable inference of the commission of such a crime, or (c) is a clue to the discovery of a matter which is within clauses (a) or (b) above; provided, a matter will not be held to incriminate if it clearly appears that the witness has no reasonable cause to apprehend a criminal prosecution. In determining whether a matter is incriminating under clauses (a), (b) or (c) and whether a criminal prosecution is to be apprehended, other matters in evidence, or disclosed in argument, the implications of the question, the setting in which it is asked, the applicable statute of limitations and all other factors, shall be taken into consideration. L. 1960, c. 52, p. 455, § 18 [N. J. S. A. 2A:84A–18.]

Applying the foregoing standards to the particular "Do you know"–questions and considering the implications of these questions and the setting in which they were asked, it is clear that the invocation of the Fifth Amendment privilege as to them was proper and the trial court was correct in sustaining such invocation.

Not every "Do you know"–question will present a potentially incriminatory situation. Dependent on the circumstances, some explanation of the basis for the fear of self-incrimination may be required. *In re Boiardo,* 34 *N. J.* 599 (1961); *In re Pillo, supra.* In the present case, however, it was stated by counsel for the SCI at the outset that the SCI was conducting an investigation into organized crime and racketeering in New Jersey and that Ippolito had been

subpoenaed in connection with that investigation. *Inter alia,* the witness was then asked 33 questions as to whether he knew named persons who were known or suspected members of organized crime. These questions, in the context of all of the questioning and the nature of the investigation, obviously were intended to establish some relationship between Ippolito and the activities of organized crime.

*In Malloy v. Hogan, supra,* which involved an investigation into gambling and other criminal activities in the State of Connecticut, Malloy had refused to answer a number of questions on the grounds of self-incrimination and had been jailed for contempt. One of the questions which Malloy had refused to answer was whether he knew John Bergoti. As to this question the Connecticut Supreme Court of Errors held that Malloy's failure to explain how a revelation of his relationship with Bergoti would incriminate him vitiated his claim of incrimination.

The United States Supreme Court reversed. It held that in the context of the inquiry it should have been apparent that Bergoti was suspected by the State to be involved in some way with the subject matter of the inquiry. An affirmative answer by Malloy, the court said, might well have connected Malloy with criminal activities or at least have operated as a waiver of his privilege with reference to his relationship with a possible criminal. Quoting from *Hoffman v. United States,* the court concluded that it was evident from the implications of the question, in the setting in which it was asked, that a responsive answer or explanation of why it could not be answered might be dangerous because injurious disclosure could result. *Malloy, supra,* 378 *U. S.* at 14, 84 *S. Ct.* 1489.

In the instant case the incriminating flavor is much stronger. Here the "Do you know"–questions involved persons who were known or suspected members of organized crime. Considering that there were 33 questions of this nature asked, the implications of criminal activity or relationship thereto are substantial.

The constitutional problem is not solved by holding that if Ippolito is compelled to answer or disclose the basis for his refusal to answer after having claimed the privilege, his incriminatory answers or disclosures cannot be used against him in any subsequent criminal prosecution. See *In re Boyd*, 36 *N. J.* 285 (1962); *In re Boiardo, supra; State v. DeCola*, 33 *N. J.* 335 (1960). These decisions afford protection to the witness or defendant who has claimed the privilege and who has been ordered to answer or make a disclosure and whose answer or disclosure proves to be incriminatory. However, *Boyd, Boiardo* and *DeCola* were not intended to, nor could they constitutionally permit circumvention of a proper invocation of the privilege.

A witness or defendant who is not granted immunity and is required to give incriminatory answers or make incriminatory statements, does incriminate himself. His protection arises only when a court rules that such answers or statements cannot be used against him in a subsequent criminal proceeding. The Fifth Amendment, though, protects against being compelled to incriminate oneself in the first place. Ippolito can be required to answer the particular questions only if the SCI first grants him immunity under *N. J. S. A.* 52:9M–17.

The judgment of the Appellate Division is reversed and the ruling of the trial court on the questions in issue is hereby reinstated.

*For reversal*—Chief Justice HUGHES and Justices SULLIVAN, PASHMAN, CLIFFORD, SCHREIBER and HANDLER—6.

*For affirmance*—None.