**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NOS. A-3472-18T1
              A-3473-18T1

PROVIDENT BANK,

     Plaintiff-Respondent,

v.

RAJENDRA KANKARIYA
and JYOTI KANKARIYA,

     Defendants-Appellants.

_____

Argued September 11, 2019 – Decided October 9, 2019

Before Judges Whipple, Gooden Brown and Mawla.

On appeal from an interlocutory order of the Superior Court of New Jersey, Law Division, Bergen County, Docket No. L-2729-18.

Michael Angelo Baldassare argued the cause for appellants (Baldassare & Mara, LLC, attorneys for appellant Rajendra Kankariya; Michael Angelo Baldassare, on the joint briefs).

Gruppuso Legal, attorneys for appellant Jyoti Kankariya (Anthony M. Gruppuso, on the joint brief).

John R. Stoelker argued the cause for respondent (Mc Carter & English LLP, attorneys; Joseph J. Lubertazzi, of counsel and on the brief; John R. Stoelker, on the brief).

PER CURIAM

The power to compel testimony is limited by the Fifth Amendment. In these consolidated appeals, on leave granted, we examine application of that limitation. Defendants Rajendra and Jyoti Kankariya appeal the trial court's February 11, 2019 discovery order requiring them to comply with plaintiff Provident Bank's discovery requests or face potential imprisonment pursuant to a writ of capias ad satisfaciendum (ca. sa.). We affirm.

I.

Defendants own Lotus Exim International, Inc. (LEI), a marble and granite wholesaler. In January 2017, defendants, on behalf of LEI, obtained a $17 million dollar loan from plaintiff Provident Bank. To secure the loan, defendants executed personal guarantees promising to repay the loan in the event of a default. As part of the loan application, defendants submitted personal financial statements wherein they claimed to own: a home valued at $1,200,000, $700,000 worth of securities, life insurance policies with cash surrender values of $160,000, and personal property worth $90,000.

Soon after securing the loan, LEI defaulted and, in addition to other related entities, filed for bankruptcy in the United States Bankruptcy Court for the District of New Jersey. Defendants filed a personal petition for chapter seven bankruptcy, but it was dismissed. On April 16, 2018, plaintiff filed a complaint in the Superior Court against defendants, seeking a judgment for the full amount due on the loan by means of the personal guarantees. Defendants did not file responsive pleadings and default was entered against them. On June 26, 2018, a final judgment of default was entered against defendants in the amount of $16,972,003.52. Defendants do not dispute the judgment's validity.

In order to collect on its judgment, plaintiff filed a verified petition for discovery under Rule 4:59-1, to obtain an order directing defendants to provide documents and sworn testimony concerning their personal assets. On July 5, 2018, the trial judge entered a discovery order and required defendants to produce documents by July 20, 2018, and attend depositions on July 30, 2018. Meanwhile, in the bankruptcy proceeding, the trustee served defendants with subpoenas to obtain documents and testimony related to the debtor. In response to a motion to quash, the bankruptcy court ordered defendants turn over documents in their custodial capacity, but provided that the act of production could not be used against them in any criminal, civil, or other legal proceeding.

A-3472-18T1

On July 20, 2018, defendants did not deliver any documents to plaintiff and during their respective depositions, defendants asserted their Fifth Amendment privilege in response to all of plaintiff's questions, except their name, address and date of birth. Some questions appeared innocuous, such as: whether defendants drove a car to the deposition; whether defendants owned furniture; whether defendants held bank accounts; whether defendants owned jewelry and the value of the jewelry Jyoti was wearing; whether defendants paid for utilities at their home; whether defendants maintained health insurance; whether defendants owned any collections, like a wine or stamp collection and; whether defendants brought their drivers licenses to the deposition. A few questions were directed at whether defendants received any money from LEI.

As a result of defendants' assertion of Fifth Amendment rights, plaintiff moved for an order enforcing litigant's rights, issuance of a writ of ca. sa., and other related relief. Oral argument was held on November 2, 2018. Plaintiff argued defendants were not entitled to make a "blanket" assertion of their Fifth Amendment privilege without showing there is a link between the questions asked and potential criminal prosecution. In response, defendants argued that all the questions about defendants' personal finances and assets were "links in the chain" of potential criminal prosecution. When pressed on the credibility of

4

their fear of criminal prosecution, defendants cited to an allegation made in the bankruptcy proceeding that LEI's principals, i.e., defendants, fraudulently procured the loan.

The fraud allegation appeared in a preliminary statement included in plaintiff's brief in support of its motion for summary judgment in the bankruptcy proceeding. Plaintiff was engaged in a priority dispute with Itria Ventures LLC (Itria), who allegedly induced plaintiff to extend the loan to LEI. Thus, plaintiff asserted "it can easily establish the fraud committed by Itria, Biz2Credit [Itria's affiliate], LEI and their principals on creditors, including Provident." "Principals" includes defendants, who own LEI. No grand jury investigations or pending criminal prosecutions were brought to the court's attention.

According to defendants, the fraud allegation provided them with sufficient grounds to assert the privilege and resist all plaintiff's questions, even the innocuous ones. Defendants argued, if a ca. sa. were to issue, they would be forced to choose between jail or relinquishing their Fifth Amendment privilege. Thus, defendants argued the statute authorizing a ca. sa., N.J.S.A. 2A:17-78, was unconstitutional on its face and as applied. The court disagreed and granted plaintiff's motion on February 11, 2019.

A-3472-18T1

Pursuant to N.J.S.A. 2A:17-78, a court may order the imprisonment of a debtor, if the debtor possesses fifty dollars or more and he refuses to devote his assets to satisfy the debt. However, the New Jersey Constitution provides that "No person shall be imprisoned for debt in any action, or on any judgment founded upon contract, unless in cases of fraud[.]" N.J. Const. of 1947, art. I, ¶ 13. Despite the constitutional prohibition, the trial judge concluded writs of ca. sa. may still validly issue in New Jersey. Considering defendants had assets greater than fifty dollars, and they were resisting applying their assets to satisfy plaintiff's judgment, the trial judge found the writ was an appropriate remedy.

With respect to defendants' Fifth Amendment claims, the trial judge found they did not demonstrate a "real and appreciable" danger that their answers could lead to criminal prosecution. The trial judge rejected defendants' argument that they were not obligated to answer any of the plaintiff's questions and noted the Fifth Amendment privilege must be asserted "with reference to the ordinary operation of the law[.]" Additionally, the judge found the privilege did not relieve defendants of their obligation to produce documents plaintiff requested.

To facilitate cooperation with her discovery order, the trial judge required defendants to produce the requested documents by February 22, 2019, and attend depositions ten days later. In the event defendants renewed their Fifth

6

Amendment privilege claim, the trial judge ordered that the parties were to return for an evidentiary hearing where the trial judge could assess the merits of their assertions. The trial judge warned if she found defendants' Fifth Amendment assertions baseless, and they continued to disobey the discovery order, a ca. sa. would issue. An unsigned arrest order was attached to the order as an exhibit.

On February 22 and 28, 2019, the trial judge amended her original order and extended the document production and deposition deadlines. On March 12, 2019, defendants filed orders to show cause seeking a stay of the arrest orders while their motion for leave to appeal was pending. After oral argument on March 22, 2019, the trial judge granted a stay, and we granted leave to appeal. This appeal followed.

## II.

Defendants argue the trial judge erred in her ruling that defendants unjustifiably invoked the Fifth Amendment privilege and must establish a justification in an evidentiary hearing. They also assert it was error for the judge to order their appearance at another deposition, answer questions and provide documents without immunity. Additionally, they argue their constitutional rights were violated and the writ ca. sa. is unconstitutional.

Defendants frame the issues on appeal as a matter of constitutional interpretation, which would require de novo review. See, e.g., State v. S.S., 229 N.J. 360, 380 (2017). However, these perceived constitutional injuries have yet to occur. We review the judge's discovery order under an abuse of discretion standard. See Pomerantz Paper Corp. v. New Cmmty. Corp., 207 N.J. 344, 371 (2011) ("[W]e apply an abuse of discretion standard to decisions made by our trial courts relating to matters of discovery."). And only to the extent we examine the judge's legal conclusions, we review de novo. See Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995) ("A trial court's interpretation of the law and the legal consequences that flow from established facts are not entitled to any special deference.").

Because defendants have not appeared for additional depositions and have not been jailed, they ask us to review a prospective and unmaterialized violation of their Fifth Amendment privilege. However, the harm complained of, issuance of a ca. sa. will force defendants to relinquish their Fifth Amendment privilege, will not be ripe for review unless and until the trial court holds a Fifth Amendment privilege hearing consistent with its February 11, 2019, order. The trial court's February 11, 2019 order contains two triggering events: (1) the trial judge must, after a Fifth Amendment hearing, order defendants to answer

questions under oath and (2) if defendants decline to do so, arrest orders would issue.  Since neither event has ocurred, we can only consider the procedures the trial judge designed to secure compliance with her discovery order.

"The Fifth Amendment declares in part that 'No person . . . shall be compelled in any criminal case to be a witness against himself.'"  Hoffman v. United States, 341 U.S. 479, 485–86 (1951) (quoting U.S. Const. amend. V). "Although New Jersey's privilege against self-incrimination is not enshrined in our State Constitution, 'the privilege itself is firmly established as part of the common law of New Jersey and has been incorporated into our Rules of Evidence.'"  State v. Kucinksi, 227 N.J. 603, 617 (2017) (quoting State v. Hartley, 103 N.J. 252, 260 (1986)); see N.J.R.E. 503.  "[The privilege] can be asserted in any proceeding, civil or criminal, administrative or judicial, investigatory or adjudicatory; and it protects against any disclosures which the witness reasonably believes could be used in a criminal prosecution or could lead to other evidence that might be so used."  Kastigar v. United States, 406 U.S. 441, 444–45 (1972) (footnotes omitted); see also Lefkowitz v. Cunningham, 431 U.S. 801, 805 (1977) ("[S]ince the test is whether the testimony might later subject the witness to criminal prosecution, the privilege

is available to a witness in a civil proceeding, as well as to a defendant in a criminal prosecution.").

"The privilege afforded not only extends to answers that would in themselves support a conviction under a federal criminal statute but likewise embraces those which would furnish a link in the chain of evidence needed to prosecute the claimant for a federal crime." Hoffman, 341 U.S. at 486. "But this protection must be confined to instances where the witness has reasonable cause to apprehend danger from a direct answer." Ibid.

"To sustain the privilege, it need only be evident from the implications of the question, in the setting which it is asked, that a responsive answer to the question or an explanation of why it cannot be answered might be dangerous because injurious disclosure could result." Id. at 486-87.

> The test for the judge, "governed as much by his [or her] personal perception of the peculiarities of the case as by the facts actually in evidence," is whether . . . "there is reasonable ground to apprehend danger to the witness from his [or her] being compelled to answer[.]"
>
> [In re Pillo, 11 N.J. 8, 19 (1952) (citing Hoffman, 341 U.S. at 487) (quoting R. v. Boyes, 1 B. & S. 311, 321 (1861)).]

"[T]he danger to be apprehended must be real and appreciable[,]" id. at 19–20, because the privilege "protects against real dangers, not remote and

A-3472-18T1

speculative possibilities." Zicarelli v. N.J. State Comm. of Investigation, 406 U.S. 472, 478 (1972).

"A witness'[s] mere claim of the privilege does not establish the hazard of incrimination. In re Ippolito, 75 N.J. 435, 440 (1978). It is for the court to say whether, under all of the circumstances, silence is justified." Id. (citing Hoffman, 341 U.S. at 486). A witness's sincere belief that his or her answers may be incriminating, without more, is not enough "to foreclose his [or her] answering or making a disclosure[.]" N.Y. State Nat'l Org. for Women v. Terry, 886 F.2d 1339, 1356 (2d Cir. 1989). "If the court determines that the incriminatory nature is not readily apparent, the witness then must endeavor to explain how his answer will be incriminatory." United States v. Edgerton, 734 F.2d 913, 919 (2d Cir. 1984). "This burden forces a witness to come dangerously close to doing that which he is trying to avoid." Ibid.

A party "does not have a 'blanket' right to refuse all questions." State Farm Indem. Co. v. Warrington, 350 N.J. Super. 379, 388 (App. Div. 2002). To execute a "particularized inquiry" the court must consider on a question-by-question basis whether each "might elicit [an] incriminatory answer[][.]" United States v. Bowe, 698 F.2d at 560,566 (2d Cir. 1983); see Ippolito, 75 N.J. at 439 (explaining how the Superior Court evaluated a witness's privilege claims on a

11

question-by-question basis). Thus, the trial judge must examine each question, determine whether "there is a reasonable basis for believing a danger to the witness <u>might</u> exist in answering a particular question," and consider "whether a narrower privilege would suffice to protect the witness from danger" all before determining whether the privilege was validly asserted. <u>United States v. Thornton</u>, 733 F.2d 121, 125 (D.C. Cir. 1984) (alterations in original); <u>see also</u> <u>Magid v. Winter</u>, 654 So.2d 1037, 1039 (Fla. Dist. Ct. App. 1995) (requiring the trial court to assess witness's privilege claim "on a question-by-question basis"). It is within the judge's discretion, "[i]n unusual cases . . . [to] sustain a blanket assertion of privilege after determining that there is a reasonable basis for believing a danger to the witness might exist in answering <u>any</u> relevant question." <u>Thornton</u>, 733 F.3d at 126 (alterations in original). But that requires a finding that the witness "could 'legitimately refuse to answer all relevant questions.'" <u>United States v. Tsui</u>, 646 F.2d 365, 367–68 (9th Cir. 1981) (quoting <u>United States v. Goodwin</u>, 625 F.2d 693, 701 (5th Cir. 1980)).

Moreover, the court is not limited to the formal record in making a privilege determination to minimize the risk a witness will disclose

A-3472-18T1

incriminatory information. See Hoffman, 341 U.S. at 487–88 (considering news reports and information from sources outside the record).[1]

Defendants' personal documents are given the same Fifth Amendment protections. See State v. Andrews, 457 N.J. Super. 14, 22 (App. Div. 2018); but see In re Guarino, 104 N.J. 218, 232–33 (1986) (holding that a corporation, partnership, or sole proprietorship's business records are not afforded the same Fifth Amendment protections as personal records). "When the privilege is asserted with respect to records, the witness must produce them so that the court may determine whether the claim is spurious[.]" In re Addonizio, 53 N.J. 107, 117 (1968).

---

[1] The court also has the discretion to utilize in camera proceedings to ensure the witness's privilege claim is legitimate. See United States v. Duncan, 704 F. Supp. 820, 822–23 (N.D. Ill. 1989) (conducting in camera review of records and requiring witness to respond in writing to each question he refused to answer to explain how each response was incriminating); Commonwealth v. Pixley, 933 N.E.2d 645, 649 (Mass. App. 2010) ("In exceptional circumstances, the information made available to the judge in open court will not be adequate to permit the judge to assess the validity of the asserted privilege. When this is the case, the judge may conduct an in camera hearing with the witness and the witness's counsel at which the witness will be required to disclose enough additional information to permit the judge to make the determination.") (emphasis added). However, all of these procedures bring their own particular peril. See Sheridan v. Sheridan, 247 N.J. Super. 552, 565 (Ch. Div. 1990).

Under federal law, "a person may be required to produce specific documents even though they contain incriminating assertions of fact or belief because the creation of those documents was not 'compelled' within the meaning of the privilege." United States v. Hubbell, 530 U.S. 27, 35-36 (2000). In United States v. Fisher, 425 U.S. 391, 409–10 (1976), a taxpayer was not permitted to withhold documents because they were voluntarily created, and therefore their disclosure not compelled, prior to issuance of a subpoena. Of course, the act of production may be testimonial in and of itself. Hubbell, 530 U.S. at 36. We presume this is why, in this case, the bankruptcy court granted defendants immunity to produce documents in their custodial, not personal, capacity. However, unlike in the bankruptcy proceeding, defendants here are not acting in a custodial capacity. This suit concerns personal guarantees on a debt. Based on this record, defendants have not demonstrated the jeopardy apparent as principals in the bankruptcy proceeding.

Defendants argue they are "under no duty to explain or prove the hazard posed by answering [plaintiff's] questions or producing the documents sought by [plaintiff]." We disagree. The judge was correct in ordering the parties to return for a Fifth Amendment hearing in the event defendants continue to disobey the discovery order.

14

If and when that hearing occurs, the judge must analyze the deposition questions on a question-by-question basis and defendants must demonstrate their fear of providing an incriminating response is "real and appreciable[,]" Pillo, 11 N.J. at 19–20, "not remote and speculative[.]" Zicarelli, 406 U.S. at 478. The judge should determine whether "there is a reasonable basis for believing a danger to the witness might exist in answering a particular question," and consider "whether a narrower privilege would suffice to protect the witness from danger" all before finding the privilege was validly asserted. Thornton, 733 F.2d at 125 (alteration in original).

Defendants must also produce the requested documents for the court to review. Addonizio, 53 N.J. at 116–17. Defendants should be held to the same burden as under the testimonial privilege, and the judge should analyze their privilege claim on a document-by-document basis.

### III.

For the first time on appeal, defendants argue that they must be given use immunity before providing testimony or producing documents under Whippany Paper Board, Co. v. Alfano, 176 N.J. Super. 363, 369 (App. Div. 1980), and suggest, like the defendants in that case, the trial court should not have required defendants to testify unless and until they received a grant of use immunity. We

15

decline to entertain the argument. "[A]ppellate courts will generally 'decline to consider questions or issues not properly presented to the trial court when an opportunity for such a presentation is available,' unless the issues relate to jurisdiction or substantially implicate public interest." Tractenberg v. Twp. of W. Orange, 416 N.J. Super. 354, 377 (App. Div. 2010) (quoting Nieder v. Royal Indem. Ins. Co., 62 N.J. 229, 234 (1973)).

IV.

Finally, we reject defendants' argument challenging the constitutionality of the statute authorizing writs of ca. sa. The statute authorizing writs of ca. sa. has persisted as constitutionally firm since the passage of the 1844 constitution, which abolished debtor imprisonment except in cases of fraud. Moreover, we decline to address a constitutional question until it is necessary to do so. Defendants' argument, the ca. sa. issued because they invoked their Fifth Amendment rights, distorts the case's procedural history. The judge has yet to hold a Fifth Amendment hearing. Therefore, defendants' perceived constitutional injury is, at best, unripe.

We affirm the trial judge's order, vacate the stay so the parties may proceed to discovery as directed and a hearing, if necessary, consistent with this opinion.

16

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

17